## BETA A. H. KENNEDY, Executrix,

### vs.

## EUGENE S. KENNEDY.

*Wills: capacity; undue influence. Prayers: unsupported by evidence. Prayers taking case from jury.*

Although a prayer may be correct in principle, it should not be granted unless there be evidence in the case to support the theory on which it is granted.      p. 41

In order to condemn and avoid a will on the ground that it was procured by undue influence, it is not sufficient to show that there was influence which affected the testator's disposition of his property; but in order to vitiate his act it must appear that such influence at the time he made such disposition dominated his will, took away his agency, and prevented the exercise of judgment and choice by him.      pp. 42-43

Upon a question of a testator's capacity to make a will, it is not competent evidence for a witness to speak of what other persons knew, or their opinion of the testator's habit of making wills.      p. 44

In the trial of issues from an Orphans' Court, as to the question of undue influence, etc., a prayer to take the case from the jury, on the ground of want of evidence, should refer to the whole evidence, and not to the evidence of the caveators alone.      p. 45

*Decided June 26th, 1914.*

Appeal from the Court of Common Pleas of Baltimore City. (Dobler, J.)

The facts are stated in the opinion of the Court.

The cause was submitted to Boyd, C. J., Briscoe, Burke, Thomas, Urner, Stockbridge and Constable, JJ.

*Karl A. M. Schollz* and *W. Harry Holmes* submitted a brief for the appellant.

*Walter W. Parker* and *John R. M. Staum* submitted a brief for the appellee.

Briscoe, J., delivered the opinion of the Court.

On the 21st day of October, 1913, at the instance of the caveator, Eugene S. Kennedy, five issues were directed by the Orphans' Court of Baltimore City to be sent to the Court of Common Pleas of that city to be tried by a jury, upon a caveat to the will of David D. Kennedy, the deceased father of the appellee.

The issues as set out in the record are as follows:

(1) Was the paper writing dated the 14th day of December, 1911, purporting to be the last will and testament of the said David D. Kennedy, signed by him or by some other person in his presence or by his express direction and subscribed in the presence of two credible witnesses?

(2) Were the contents of the paper writing, dated the 14th day of December, 1911, purporting to be the last will and testament of David D. Kennedy, read to, or by him, or known to him, at or before the time of the alleged execution thereof?

(3) Was the execution by said David D. Kennedy of said paper writing, dated the 14th day of December, 1911, and purporting to be the last will and testament of said David D.

Kennedy procured by undue influence exercised and practiced upon him?

(4) Was the said paper writing, dated the 14th day of December, 1911, and purporting to be the last will and testament of said David D. Kennedy, executed by him when he was of sound and disposing mind and capable of executing a valid deed or contract?

(5) Was the said David D. Kennedy induced to make said paper writing, dated the 14th day of December, 1911, and purporting to be his last will and testament, by fraud practised upon him?

The verdict of the jury, at the conclusion of the plaintiff's testimony appears from the record, to have been rendered, under instructions of the Court, in favor of the caveatee on the first, second, fourth and fifth issues. The caveatee's third prayer, asking the Court to direct a verdict for the defendant on the third issue, was rejected, and after a trial, upon that issue, the verdict of the jury was in favor of the caveator, to wit, that the execution of the will was procured by undue influence exercised and practiced upon him.

There were four bills of exception reserved at the trial. Three present the rulings of the Court on questions of evidence and the fourth to the overruling of a special exception to the caveator's second prayer, to the granting of this prayer and to the refusal of the caveatee's first prayer offered at the conclusion of the whole testimony. This last-named prayer was a renewal of the caveatee's rejected third prayer, at the conclusion of the caveator's testimony, and was to the effect that the caveator had offered no evidence legally sufficient to show that the will was procured by the undue influence of any person or persons, and that the verdict of the jury must be for the defendant on the third issue.

The caveator's (plaintiff) second prayer was in substance a copy of the plaintiff's first prayer approved by this Court, in *Hiss* v. *Weik,* 78 Md. 439, defining undue influence. In that case, where the chief question raised, was whether there

was legally sufficient evidence offered by the caveator to justify the submission of the case to the jury, the Court said, the plaintiff's instruction accurately defined undue influence as understood in its legal sense, and left to the jury to find from the evidence the existence of the facts necessary to constitute such an influence. The appellants' first and second prayers asked the Court to withdraw the case from the jury upon the ground that there was no sufficient evidence that the will had been procured by undue influence. If the appellee's instruction was properly granted, there was no error committed in rejecting the appellants' first and second prayers; but if there was error in rejecting these latter, there was of necessity error in granting that of the appellee. So, as already suggested, the controlling inquiry is, was there legally sufficient evidence, that is competent evidence, tending to prove the issues which ought to have gone to the jury. In *Hiss* v. *Weik, supra,* the Court granted the plaintiff's first prayer, because after a full review of the testimony it held, that the evidence was legally sufficient from which the jury could properly find, if they believed it to be true, that the will had been procured by undue influence.

In the case now before us, we are of opinion, that there was no legally sufficient or competent evidence to support the plaintiff's second prayer, upon the issue of undue influence, and for this reason, even conceding the correctness of the legal proposition contained therein, the prayer should have been refused and rejected. For this reason there was error in overruling the defendant's special exception to this prayer and in granting the prayer. *Farmers' Bank* v. *Hunter,* 97 Md. 148.

The facts of the case are these: David D. Kennedy, the testator, died on the 30th of April, 1912, in the fifty-sixth year of his age, leaving two sons by a former marriage and a second wife, the appellant. The oldest son, the caveator, was about twenty-seven years of age, and the other son,

about fifteen years of age, at the time of his death. The will is dated the 14th of December, 1911, and is as follows:

> "I, David D. Kennedy, being of sound mind and body, do hereby constitute this my last will and testament.
>
> "I devise and bequeath to my wife, Beta A. H. Kennedy, all my real and personal property which shall remain after paying one hundred dollars each to my sons, Eugene S. and David D., Jr.
>
> "It is my desire that the said Beta A. H. Kennedy shall serve without bond.
>
> "All former wills or bequests are hereby canceled."

The value of the entire estate left by the testator amounted to about $7,214.95, consisting of a lot appraised at $1,300 and proceeds of an insurance policy and certain death benefit funds.

At the time of his death the testator was employed as Chief Clerk of the Passenger Division of the B. & O. R. R. Company, and had served as a member of the board of School Commissioners of Baltimore City. The will was prepared by the testator himself, and executed at his office in Baltimore City. It was witnessed by three of the clerks employed with him in the office of the B. & O. R. R. Co. The will was executed about one year after his second marriage.

There were nine witnesses produced and examined on behalf of the caveator and twelve on behalf of the caveatee, and a careful examination of the testimony of each witness fails to disclose a particle of evidence tending to support the charge of undue influence, or that the will was the result of such an influence.

In *Somers* v. *McCready,* 96 Md. 439, it is said, from what appears to be the rule of law by which we are to be guided in the inquiry as to the sufficiency of evidence to support a charge of undue influence in the procuring of a will, it is not sufficient to condemn and avoid the will to find that there was influence which affected the testator's disposition of his

property; but it must be, to vitiate his act, such influence as, at the time he was making such disposition, dominated his will, took away his free agency and prevented the exercise of judgment and choice by him.

In *Saxton* v. *Krumm,* 107 Md. 399, it is said, upon this issue the burden of proof was upon the plaintiff and she was obliged to offer evidence tending to show that the will was the product of an influence exerted upon the testator to such a degree as to amount to force or coercion or by importunities which he could not resist, so that the motive was tantamount to force or fear.

In *Dudderar* v. *Dudderar,* 116 Md. 618, it is said, this Court has consistently adhered to the principle that the only influence which will be held to be undue and to be sufficient to invalidate a will which it has affected, is that which is urged to such a degree as to amount to force and coercion and to destroy the testator's free agency.

There is no evidence upon the part of the caveator in this case to answer the rule established by the cases cited to show undue influence. Nor do the facts of the case bring it within the requirements of the cases of *Hiss* v. *Weik,* 78 Md. 439, and *Moore* v. *McDonald,* 68 Md. 340, relied upon by the appellee, where the Court held, that the evidence was legally sufficient to submit the question of undue influence to the jury.

There is no competent evidence that the caveatee at any time influenced the testator or attempted to exercise any improper influence over him in the preparation or in the making of the will. She was not present when the will was made, and testified, that there was an understanding between them that each was to make a will and to leave to the other what they had, but there was no definite time ever stated when they would make their wills. She further testified, that she never suggested to him how he should make his will.

There is no evidence tending to contradict her testimony. On the contrary, it is supported by the other evidence in the case.

In our opinion, the evidence in this case, was legally insufficient to support the issue of undue influence, and the Court should have sustained the defendant's exception to the plaintiff's second prayer.

There were three exceptions to the admissibility of testimony and there was error upon the first and third of these rulings.

The first exception was taken to permitting the witness Taggart, to answer the following question over the objection of the defendant:

Q. Were or not those in official contact and relationship with him in subordinate capacities familiar with this peculiarity?

The witness had previously stated, that he did not know to what extent this habit of making wills was known to other persons in the office, but it was commented on slightly.

The witness was not competent to speak of what other persons knew or their opinion of the testator's habit in making wills. If admissible at all, it could only be shown by the witnesses themselves.

Mr. Jones in his *Work on Evidence,* sec. 359, says: "There is no more familiar principle in the law of evidence than that the opinions of witnesses are in general irrelevant. Even when witnesses are limited in their statements to facts within their own knowledge, their bias, ignorance and disregard of the truth are obstacles which too often hinder in the investigation of the truth. If it were a general rule of procedure that witnesses might be allowed to state not only those matters of facts about which they are supposed to have knowledge, but also the opinions they might entertain about the facts in issue, the administration of justice would become little less than a farce." *Kelly v. Kelly,* 103 Md. 548.

The third exception relates to the admission in evidence of a letter written by the appellant to the appellee after the death of the testator. The letter itself does not reflect in anyway upon the issue of undue influence and there is nothing in the letter that could furnish any ground for the conclusion that undue influence had been used by the appellant. It contained nothing that was relevant to the issue and there was error in admitting it.

All of the testimony, which formed the basis of the Court's rulings on evidence, was admitted and we hold it to be legally insufficient even if considered as properly admitted, to establish the caveator's case.

The caveatee's first prayer, should have comprehended the whole evidence instead of being confined to that offered by the caveator alone. While there was no evidence offered upon either side that was legally sufficient to prove undue influence, the form of the prayer is open to criticism. *Pa. R. R. Co.* v. *Cecil,* 111 Md. 288.

This was doubtless an oversight upon the part of the defendant, and can be cured upon a new trial.

For the errors indicated, the rulings will be reversed and a new trial granted.

*Rulings reversed and cause remanded.*